The Honorable Shane Broadway State Senator 201 Southeast Second Street Bryant, Arkansas 72022-4025
Dear Senator Broadway:
I am writing in response to your request for an opinion concerning the status of the board members of the Springhill Fire Protection District following an annexation of some portion of the district by the City of Bryant. In your request for an opinion, you have noted that the Springhill District is organized under A.C.A. §§ 14-28-201 through -225 (Repl. 1998 Supp. 2005) and currently operates outside of the Bryant city limits. You further note that Bryant is planning to annex a portion of the district which includes the residence of the chairman of the district board by ordinance and plans to have another larger proposed annexation of territory currently lying within the district put before the people in the general election of 2006. With this situation in mind, you pose the following questions:
 1) May a member of the Springhill Fire Protection District Board serve the remainder of the member's appointed term after the area in which the member resides has been annexed into the city?
 2) Is there any legal impediment to the board remaining intact until the annexation results of the November 2006 general election are certified?
 3) If a board member must be replaced prior to the expiration of the member's term as a result of either proposed annexation, how and when should the board member be replaced?
 4) If part of the Springhill Fire Protection District is annexed into the City of Bryant, is the district required to reorganize? If so, how and when, and may the board wait until the annexation results of the November 2006 general election are certified to accomplish the reorganization?
RESPONSE
With respect to your first question, if there is a "mutual, formal agreement" between the district and the City, or if bonded indebtedness is outstanding, a court in my opinion would find that the fire protection district includes the annexed lands for the reasons set forth below, allowing the board member to continue service. If there is no agreement and no outstanding bonds, it is unclear whether the boundaries of the fire protection district change by operation of law so as to affect the board member's service. In my opinion, however, in any event, the board member would be at least a de facto officer who could continue to serve until or unless removed or until the expiration of his term. With respect to your second question, in my opinion the Board must continue to abide by the statutory terms of office set by law. With respect to your third question, A.C.A. § 14-284-208(c) governs filling of vacancies on the board and specifies that the county court will appoint a new commissioner for the remainder of the vacating commissioner's term. With respect to your fourth question, in my opinion as long as the Springhill Fire Protection District was properly formed originally, there is no need to reorganize when some portion of the district has been annexed. Legislative clarification on the status of the annexed territory is warranted, however.
Question One: May a member of the Springhill Fire Protection DistrictBoard serve the remainder of the member's appointed term after the areain which the member resides has been annexed into the city?
In my opinion, if a member of the Springhill Fire Protection District Board of Commissioner's residence area is annexed by a city, and the district has a "mutual, formal agreement" with the city as described below or if the district has outstanding bonds issued prior to the annexation, a court would likely find that the annexed property is still part of the district and that the member may still properly serve on the Board of Commissioners. If the district does not have such an agreement with the city or outstanding bonds, it is unclear how annexation of a portion of a fire protection district affects its boundaries. Regardless, the board member may continue to serve his or her appointed term as a defacto member even if no longer eligible to sit on the board.
The Springhill Fire Protection District is organized under A.C.A. §§14-284-201 through -225. The code specifies the composition of the Board stating:
 (a) . . . [T]he county court shall enter an order establishing a district as described in the petitions or ordinance and shall appoint five (5) qualified electors of the district as a board of commissioners for the district, unless it is otherwise provided by law.
* * *
 (2) All successor appointments shall be appointed by the county court for terms of three (3) years.
A.C.A. § 14-284-208 (Supp. 2005) (emphasis added). Clearly, being a qualified elector of the fire protection district is required for appointment to the board of commissioners. Id.
The crucial issue underlying all your questions is how municipal annexation of territory included in a fire protection district affects the boundaries and representation of the district.
Section 14-284-201, the first statute in the applicable subchapter, originally adopted in 1979, clearly envisions that such districts will only be established in unincorporated areas:
 (a)(1) Fire protection districts established under the provisions of this subchapter shall cover only territory within the county, or within the defined district, outside the corporate limits of cities and towns.
Id.; see also Cox v. Comm'rs of Maynard Fire Imp. Dist. No. 1,287 Ark. 173, 697 S.W.2d 104 (1985) (stating that the purpose of a fire protection district under this subchapter is "to prevent duplication of fire districts and to provide fire protection in rural areas where none exists[.]"). In 1995, the General Assembly amended the subchapter by adding a new section (14-284-225). See Act 828 of 1995. The 1995 Act was entitled "An Act to Amend Arkansas Code Title 14, Chapter 284, Subchapter 2 to Clarify Taxation or Assessment of Individuals or Property Annexed into a Municipality From a Fire Protection District; and for other Purposes." The new section provides:
 No property located within the bounds of a municipality shall be assessed, taxed, or required to pay fees to any fire protection district after March 29, 1995, unless:
 (1) There is a mutual, formal agreement between the municipality and the fire protection district to provide fire protection services to the property; or
 (2) Bonded indebtedness for fire protection equipment or facilities was incurred by the fire protection district prior to the date of annexation of such property and the indebtedness incurred before annexation has not been retired.
A.C.A. § 14-284-225(Repl. 1998). While this section does not amend the earlier enacted A.C.A. § 14-284-201, it clearly contemplates a fire protection district continuing to both provide fire protection services and exacting the district's assessment on property that has been annexed into a municipality where one of the two conditions listed exists.
In such a situation, if the Springhill Fire Protection District has a "mutual, formal agreement" with the City of Bryant, or if there is outstanding bonded indebtedness, it is my opinion that a court would find that the property remains a part of the Springhill Fire Protection District as well as being within the city limits. The board member residing in the annexed property would therefore remain a qualified elector of the fire protection district and eligible for service on the board of commissioners.
If there is no mutual agreement mentioned above, or if there is no outstanding bonded indebtedness, a question arises as to the status of the annexed territory and whether it may legally remain within the boundaries of a fire improvement district. If the boundaries of the fire protection district change by operation of law upon annexation, the board member would no longer be a resident of the fire protection district and no longer a qualified elector. He would, therefore, be ineligible to be a member of the board of commissioners.
In my opinion, however, it is not clear that the boundaries of such a district automatically change upon an annexation. Although certainly, such fire protection districts may not be initially established to include territory within the corporate limits of cities and towns, A.C.A. § 14-284-210, the only statute addressing the impact of an annexation on a fire protection district, A.C.A. § 14-284-225, does not specify how its boundaries will be affected. The salient portion of the latter statute excuses only the payment of assessments, taxes or fees on property annexed. It does not purport to alter the original boundaries of the district, which were presumably described in either a county ordinance, a petition of qualified voters and/or an order of the county court. See A.C.A. §§ 16-284-203, -206, and -208; see also Op. Att'y Gen.94-246, fn. 2.
Some uncertainty exists, therefore, as to the status of annexed territory within a fire improvement district. Legislative or judicial clarification would be helpful. Even if the annexed territory is determined to be excluded from the boundaries of the district, the Arkansas Code does not contain any provisions automatically divesting a board member of his or her position should his area of residence be divested from the district. A change in residence does not automatically create a vacancy without a self-executing statutory provision expressly divesting an officer of his or her position upon a change of residence. See, e.g., Ops. Att'y Gen.98-193; and 96-154.
In my opinion, therefore the board member who may no longer be a resident of the fire protection district because of annexation of the surrounding land by an expanding city would still be a de facto member of the board of commissioners. A de facto officer is one who, even if he or she fails to qualify for the office, or loses a qualification of office, is in the possession of the office and exercising the attendant powers by virtue of a fair color of right to the office by either election or appointment.See Op. Att'y Gen. 2005-192; and Op. Att'y Gen. 2004-125. The actions of a de facto officer are valid and effective. See Op. Att'y Gen. 2004-105
(listing Arkansas Courts upholding the actions of de facto officers).
If the district and the City lack a "mutual, formal agreement," and if there is no outstanding bonded indebtedness, a properly appointed or elected member of the Board of Commissioners of the Springhill Fire Protection District whose residence is arguably outside the boundaries of the district due to annexation has in my opinion a fair color of right to the office and may continue as a de facto officer on the board, until or unless he is removed in the manner provided by law or his term expires.
Question Two: Is there any legal impediment to the board remaining intactuntil the annexation results of the November 2006 general election arecertified?
You state in your request that "[t]he present board is in agreement to remain intact regardless of any annexation or term expiration until January 2007. . . ." In my opinion, the board of commissioners must otherwise abide by the pertinent law mandating the length of terms of commissioners. Annexation does not justify an extension of the statutory term of board members. See A.C.A. § 14-284-208(a)(2)(B).
The Arkansas Code specifies that members of the board of commissioners for a fire protection district, such as the Springhill Fire Protection District, serve three year terms. A.C.A. § 14-284-208(a)(2)(B). There does not appear to be a legal method of extending those terms and the board members must continue to abide by this law. Additionally, as I noted in response to Question One, even if a board member is no longer qualified to serve on the board, that member will likely become a defacto member of the board.
Question Three: If a board member must be replaced prior to theexpiration of the member's term as a result of either proposedannexation, how and when should the board member be replaced?
An answer to this question is unnecessary in light of the discussion above.
Question Four: If part of the Springhill Fire Protection District isannexed into the City of Bryant, is the district required to reorganize?If so, how and when, and may the board wait until the annexation resultsof the November 2006 general election are certified to accomplish thereorganization?
In my opinion, the Springhill Fire Protection District is not necessarily required to reorganize if part of the district is annexed into the City of Bryant. Because, as discussed above, it is unclear what effect an annexation has on the boundaries of a fire improvement district, I cannot conclude that such a district is mandated to reorganize.
As noted by one of my predecessors, assuming that a fire protection district under A.C.A. §§ 14-284-201 through -225 was properly established, there is no violation of the prohibition on a fire protection district encompassing part of a city or town when a city or town has validly annexed a portion of the district. See Op. Att'y Gen.94-246, fn. 2. I agree with my predecessor and reiterate that the annexation of fire protection district territory by a municipality does not require the fire protection district to "reorganize" or otherwise redraw its boundaries. Prudence may dictate, however, upon the expiration of the regular term of any board member residing in the incorporated area, the appointment of a board member from the unincorporated area of the district. Again, however, the status of the annexed territory is unclear and legislative clarification is warranted.
Assistant Attorney General Joel DiPippa prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JMD/cyh